UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.:  8:15-CR-193-T-35TGW

MANUEL SANTOS CUERO VILLACILLA
_____ :

## DEFENDANT MANUEL SANTOS CUERO VILLACILLA'S SENTENCING MEMORANDUM

COMES NOW, the undersigned counsel, on behalf of the Defendant, Manuel Santos Cuero Vallecilla (Cuero), and herein files his sentencing memorandum which encompasses all remaining legal and factual objections, a 3553 analysis, requests for mitigation, sentencing suggestions, and miscellaneous sentencing issues and, in support of said issues, states as follows:

I.  GENERAL CASE FACTUAL BACKGROUND

   A.  Case History:

   A Two Count Indictment was filed on June 3, 2015, charging Mr. Cuero and two co-defendants. Count One charged conspiracy with intent to distribute five kilograms or more of cocaine, while aboard a vessel subject to the jurisdiction of the United States, in violation of Title 46, U. S. C., sections 70503(a), section 70506(a) and (b), and Title 21, U. S. C., section 960(b)(1)(B)(ii). Count Two charged possession with intent to distribute five kilograms or more of cocaine, while aboard a vessel subject to the jurisdiction of the United States, in violation of Title 46, U. S. C. sections 70503(a) and 70506(a); Title 21, U. S. C.

960(b)(1)(B)(ii). On August 24, 2015, Mr. Cuero entered a guilty plea to Count One, the conspiracy charge, with a written plea agreement. On September 22, 2015, the guilty plea was accepted by United States District Court Judge Mary S. Scriven who also adjudicated Mr. Cuero guilty. Mr. Cuero continues to admit his participation in the conspiracy. Mr. Cuero in his separately prepared response to the Pre-Sentence Report (PSR) sets forth his objections and requested changes to the PSR. Mr. Cuero on October 25, 2015, provided to the U. S. Probation Office his initial response to the PSR. However, Mr. Cuero's initial response to the PSR and the objections contained therein are only his initial response to the PSR and he reserves the opportunity to change or withdraw objections. Mr. Cuero hereby adopts his response to the PSR dated October 25, 2015, as if fully set forth herein. Mr. Cuero specifically requests that the Court review his October 25, 2015, response to the PSR as the response contains certain positions which Mr. Cuero does not include in this Sentencing Memorandum due to the confidential nature of certain matters.

II. SENTENCING POSITION

    A. The Defendant submits that a sentence that is substantially less than the minimum mandatory sentence is reasonable but not greater than necessary to adequately punish the Defendant, avoid unwanted disparity in sentencing, promote the rule of law and protect the community from any future crimes of this Defendant.

        1. The Defendant respectfully and humbly asks this Court to take note that the Defendant is a first-time and non-violent federal offender with no prior contact with the criminal justice system as a whole.

a. The Sentencing Commission has conducted recidivism studies that demonstrate that first-time; non-violent offenders are not likely to recidivate.

b. Upon information and belief a deportation Order has already been or will be filed as to Mr. Cuero. Mr. Cuero will be sent to Colombia upon his release from custody. Therefore, it is highly unlikely that he will ever again be in a position to violate United States law.

2. The Defendant respectfully and humbly asks this Court to take note that Mr. Cuero has been married by common law for approximately 18 years and raised together with his spouse four children. Together with his wife they have two biological children. One is a minor child. His minor child is nineteen (19) years old. Mr. Cuero's wife has a son, Luis, now age 23, by a previous relationship. Mr. Cuero raised Luis since Luis was about 7 years old. Luis has been ill with epilepsy for several years. Luis cannot work. Medical care and medicine for Luis has created a severe financial hardship for the family.

Mr. Cuero was placed or sold by his mother into child labor or slavery when he was five (5) years old. After his father abandoned his family his mother sent only the five year old Cuero to live with a couple on a farm. None of Mr. Cuero's siblings suffered the same fate. From the time Cuero began to live on the farm until he was at least sixteen years old, he had no meaningful contact with his biological family. The farmers immediately put the five (5) year old boy into manual labor on the farm. They gave the

3

five year boy an ultimatum, he would not eat unless he worked. Cuero went to bed hungry many nights. From the age of five, he labored from the time he awoke until he went to bed. Cuero was not the only child living with the farmer couple. A girl was also placed by her parent to live with the farmer couple. The girl also had to work so that she could eat. She was allowed to attend school. Unlike the girl, Cuero was never permitted to attend school. Cuero was never allowed any play time or to interact socially with other children. His childhood was only hard manual labor. From the age of five years, Cuero received no nurturing. His life was nothing more than to labor seven days each week. He was not afforded any time off from work. When he was eight years old the male farmer began sporadically to have Cuero work with the man fishing with a net in coastal ocean waters. Cuero lived his life in child manual hard labor or slavery for about eleven years. When he was sixteen (16) years old he left the farm and tried to earn a living fishing.

The financial situation of Mr. Cuero and his family has always been in severe poverty, even by Colombian standards. Mr. Cuero's participation in this matter was done to earn money so that his family could financially survive. As noted in the PSR, Mr. Cuero never attended school.

    a. Sentencing Commission studies, in general, show that defendants in these categories are not likely to recidivate.

III. LEGAL ANALYSIS FOR SENTENCING

    A. In light of *United States v. Booker*, 543 U.S. 220 (2005) and *Gall v. United States*, 128 S.Ct. 586 (2007), the Defendant respectfully and humbly suggests this

Honorable Court follow a three-step sentencing process in order to reach a reasonable but not greater than necessary sentence:

1. Determine correctly the applicable advisory federal sentencing guideline range. On July 18, 2014, the United States Sentencing Commission published the preliminary amendment to USSG section 1B1.10 (Reduction in Term of Imprisonment as a Result of Amended Guideline Range", also known as Amendment 782. The Amendment 782 lowers the advisory drug quantity base offense level in Mr. Cuero's case by two (2) levels.

2. Determine whether, pursuant to the Sentencing Commission's policy statements, any departures from the advisory guideline range apply.

3. Determine an appropriate sentence in light of the factors set forth in Title 18 U.S.C. Section 3553(a)(1)(3-7) each of which are to be considered with equal weight by a district court as it gives to the advisory federal sentencing guidelines.

    a. However, it is important to note, that a district court need not rely on the 3553(a) factors detailed above and may instead sentence a defendant below the advisory federal sentencing guidelines on the *sole basis* that it disagrees with the advisory federal sentencing guidelines.

IV. THE EFFECT OF *BOOKER V. UNITED STATES OF AMERICA*

   A. Pursuant to the United States Supreme Court decision of *Booker v. United States of America*, 125 S.Ct. 785 (2005), the Federal Sentencing Guidelines were deemed unconstitutional because their mandatory nature had judges, not juries, finding facts that enhanced the sentence of a defendant. The Supreme Court ruled

5

this conflicted with the Sixth Amendment jury right of a defendant. As a result, the federal sentencing guidelines are now advisory rather than mandatory in nature.

B. However, despite the decisions of the Supreme Court of the United States in *Booker* and *Gall* reminding all federal district court judges that sentencing requires individualized attention to each defendant, little immediately changed in federal sentencing according to the statistics on the Sentencing Commission's website.

1. Prior to *Booker*, approximately 64% of all federal cases were sentenced within the guidelines while shortly after *Booker* the number was 61.4%.

    a. Worse still, prior to *Booker* two-thirds of the 38.6% of federal defendants sentenced below the guidelines was the result of government-sponsored motions based upon substantial assistance.

V. THE EFFECT OF *GALL V. UNITED STATES OF AMERICA*

A. Pursuant to the United States Supreme Court decision of *Gall v. United States*, 128 S.Ct. 586 (2007), the Supreme Court once again ordered that broad discretion be restored to federal district judges by stating that the guidelines are <u>not</u> presumed reasonable and thereby allowing federal judges to impose the sentence they deem most appropriate after considering all of the sentencing factors set for in 18 U.S.C. Section 3553(a).

1. Further, any appellate review of a district court decision should be made under the more deferential "abuse of discretion" standard than the previously used "de novo" standard of review.

2. The Supreme Court of the United States again recognized in 2008 and 2009 that lower courts were still placing too much weight and emphasis on the advisory federal sentencing guidelines. In *Spears v. United States*, 129 S.Ct. 840 (2009), the Court emphasized that lower courts are in no way bound to apply the sentencing guidelines, and can impose a sentence lower than the guidelines even if that sentence is based solely on the district judge's disagreement with them:

   > **"Even when a particular defendant . . . presents no special mitigating circumstances – no outstanding service to country or community, no unusually disadvantaged childhood, no overstated criminal history score, no post-offense rehabilitation – a sentencing court may nonetheless vary downward from the advisory guideline range . . . The only fact necessary to justify such a variance is the sentencing court's disagreement with the guidelines . . ."**

3. The Supreme Court did not stop with the above critique and in a later decision, *Nelson v. United States*, 129 S.Ct. 890 (2009), it reversed the Fourth Circuit Court of Appeals for affirming a within-guidelines sentence because of the district court's statements at the defendant's sentencing hearing that "the guidelines are considered presumptively reasonable" and that "unless there's a good reason in the 3553(a) factors . . . the guideline sentence is the reasonable sentence."

   a. The Supreme Court explained in *Nelson*:

      > **"The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable. We think it plain from the comments of the sentencing judge that he did apply a presumption of reasonableness to Nelson's Guideline range. Under our recent precedents, that constitutes error."**

7

VI.  THE ATTORNEY GENERAL OF THE UNITED STATES' GUIDENCE

The most recent former Attorney General of the United States recently remarked that "As a nation we are coldly efficient in our incarceration efforts." "The Department of Justice is determined to continue…- to explore ways to give judges more flexibility in determining certain sentences. Too many people go to too many prisons for far too long for no good law enforcement reason. It is time to ask ourselves some fundamental questions about our criminal justice system. Statutes passed by legislatures that mandate sentences, irrespective of the unique facts of an individual case, too often bear no relation to the conduct at issue, breed disrespect for the system, and are ultimately counterproductive."

Additionally, the former Attorney General had instructed the U. S. Attorney's Offices to agree to a two (2) level reduction in the drug quantity base offense level in accordance with the Sentencing Commission's proposed Amendment 782.

VII.  PRE-SENTENCE INVESTIGATION REPORT LEGAL OBJECTIONS

A.  Mr. Cuero has provided his requested changes and objections to the Pre-Sentence Investigation Report (PSR) to the U. S. Probation Officer. As stated above, Mr. Cuero hereby adopts his response to the PSR as if fully set forth herein. However, Mr. Cuero reserves his opportunity to make changes to his objections and/or withdraw objections to his initial response to the PSR. Mr. Cuero for the reasons set forth in his response to the PSR and as set forth in this Sentencing Memorandum should receive a USSG level calculation and sentence that is substantially less than the statutory minimum mandatory sentence of 120 months.

VIII.  18 U.S.C. SECTION 3553 ANALYSIS

A. The Defendant respectfully requests a USSG level calculation and sentence of substantially less than the minimum mandatory sentence. In partial support, the Defendant points to the Sentencing Reform Act of 1984. It created the Federal Sentencing Guidelines. The purposes of Act were set forth in 18 U.S.C. Section 3553(a). It is in this section that federal district courts are directed to:

> **"impose a sentence sufficient, but not greater than necessary, to comply with . . . the need for the sentence imposed (A) to reflect the seriousness of the offense; (b) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."**

B. Further, Section 3553(a) directs federal district courts to consider the following set of factors when fashioning a defendant's sentence:

1. The nature and circumstances of the offense and the history and characteristics of the defendant; and

2. The kinds of sentences available; and

3. The need to avoid disparities among defendants with similar records who have been found guilty of similar conduct; and

4. The need to provide restitution to any victims of the offense.

C. United States Supreme Court Justice Breyer gave renewed importance to these 18 U.S.C. 3553(a) factors by eliminating the mandatory nature of the guidelines in his majority opinion in *Booker*.

1. Specifically, on page 17, Justice Breyer stated:

> **"Despite the absence of Section 3553(b)(1), the Act continues to provide for appeals from sentencing decisions (irrespective of whether the trial judge sentences within or outside the Guidelines range in the exercise of his discretionary power under Section 3553(a) . . . Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those**

9

**factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."**

D. Now that the guidelines are advisory, the Court is free to utilize 18 U.S.C. Section 3553(a)(1), (3)-(7) in fashioning a reasonable sentence for the Defendant. The sections of particular relevant importance in this matter are:

1. *The need to avoid unwarranted sentencing disparity among defendants with similar records and similar crimes.* In this matter there were two other crewmembers on the small boat with Cuero. Cuero was only a mariner on the vessel. Cuero had no supervisory or other degree of responsibility for the vessel or the cargo. His sole participation was to lift bales. Mr. Cuero had no proprietary interest in the drugs, or anything else related to the vessel, or on land related to the shipment or voyage. Mr. Cuero was nothing more than a mule. Mr. Cuero had no knowledge as to the actual amount of cocaine being transported. He didn't know the route that the small boat was taking. Cuero had no information as to where the drugs were ultimately destined. He was to be paid a nominal amount of money for risking his life and liberty during this voyage. Mr. Cuero's role should be determined as minimal to minor. Mr. Cuero was not an essential part of the conspiracy. Thus, there exists in this particular case a substantial disparity in potential sentences between Mr. Cuero and the charged and un-charged co-conspirators.

   a. Very recently, in another "boat" case that was not related to Mr. Cuero's case. Case number 8:10-CR-402-T-35TBM, United States v. Diego Baez Baez (Baez), the defendant, Baez, was sentenced to

a term of imprisonment of seventy-six (76) months. Mr. Diego Baez Baez is a Colombian national who was extradited to the United States from Colombia. Mr. Baez was a very high level leader and organizer of numerous maritime drug smuggling ventures to several continents. Mr. Baez also lived in Mexico for several years while he served as the organizer of cocaine transportation from Colombia to Mexico and organized tremendous amounts of narco-traffickers' money to be sent to Colombia from Mexico. The drug shipments each contained very large quantities of cocaine  The real participation that Mr. Baez had in Mr. Baez's case was numerous levels higher than the participation that Mr. Cuero had in Mr. Cuero's case. The degrees of participation of Baez in his conspiracy when compared to Cuero's participation is so extremely different that Cuero's role in the conspiracy is miniscule by comparison. Furthermore, the quantity of drugs in Mr. Baez's overall case greatly exceeded the quantity of drugs in Mr. Cuero's case. The quantity of drugs in Mr. Cuero's case was literally a drop in the bucket when compared to Mr. Baez's many years of directly working at a high level with Colombian, Mexican and others in international cocaine trafficking. Mr. Baez entered a guilty plea and cooperated with the Government. Mr. Baez did not testify in any trial. Mr. Baez at sentencing received a twelve (12) level substantial assistance reduction in his USSG calculation. The about 150 kilograms of

cocaine cited in the PSR in Mr. Cuero's case is a drop in the bucket when compared to the great quantities of cocaine organized and transported by Mr. Baez. Yet, Mr. Cuero is potentially facing many more years in prison than what Mr. Baez was initially given at sentencing. Furthermore, Mr. Baez has been released from prison and is now living comfortably in Colombia. After the initial sentencing, Mr. Baez received a time served sentence based on a Rule 35 motion filed by the Government.

It is perplexing how this sentencing system in any meaningful way can justify releasing from prison after serving only a few years people like Baez who likely made millions of dollars in narco-trafficking.. And then make a USSG level calculation and sentence someone like Cuero to substantially more years than a very high level leader like Baez.

2. *The nature and circumstances of the offense and the history and characteristics of the defendant.*

   A. Mr. Cuero entered a guilty plea as to Counts One of the Indictment with a written plea agreement. As stated above, Mr. Cuero hereby adopts his response to the PSR as if fully set forth herein. However, Mr. Cuero reserves his opportunity to make changes to or withdraw his objections to the PSR. Undersigned counsel asks the Court to recognize that Mr. Cuero, as stated above, was denied the opportunity to attend school, and that he was emotionally and physically abused by being forced into hard physical child labor or

slavery from the age of five (5) years old until he was sixteen years old. And at the age of 16 he had to try to support himself and later his family by menial fishing in coastal ocean waters. All of these factors are exceptional and unusual and show that in evaluating Mr. Cuero for mitigation and in calculating the PSR offense level that special consideration is warranted and merit a substantially reduced sentence calculation and sentence.

IX. SUGGESTED SENTENCING OPTIONS

    A. The Defendant respectfully requests that this Honorable Court grant a variance to the Defendant's total offense level for the reasons stated above and as stated in his response to the PSR and sentence the Defendant as follows: substantially less than the minimum mandatory sentence of 120 months and no fine.

        1. The Defendant respectfully suggests that a USSG offense level calculation and sentence that is substantially less than statutory minimum mandatory 120 months, is the most appropriate punishment given the totality of circumstances as this type of sentence is reasonable but not greater than necessary to appropriately punish the Defendant and, at the same time, adequately protect the community from the virtually non-existent chance of future crimes of this Defendant given his age and personal circumstances, his lack of criminal history, and his entering a guilty plea in his case. The Government has not yet indicated if it will request that the Court sentence Mr. Cuero below a minimum mandatory sentence.

           a. Further, this type of sentence will allow the Defendant to be more quickly deported to Colombia. He will not be a burden upon the

federal prison system. Although, he will live in dire poverty in Colombia he can attempt to find work to try and support himself and his family including his minor child, and a chronically ill adult stepson.. If sentenced to the severe sentence as suggested in the PSR his family and minor child will continue to have very little means of economic survival.

2. The Defendant respectfully suggests that a sentence that is substantially below the statutory minimum mandatory sentence avoids unwarranted disparities between similarly situated defendants. Furthermore, when Mr. Cuero's level of participation is compared to other defendants, such as, Diego Baez Baez, or Ivan Gonzalez Bejarano, 8:06-CR-297-T-23MAP, it is very evident that Mr. Cuero's' USSG offense level calculation and sentence merits a substantial reduction that is several years less than the statutory minimum mandatory sentence.

3. The Defendant submits that this Court can accomplish a sentence that is several years less than the statutory minimum mandatory by utilizing three distinct and separate ways:

   a. Based upon a Title 18 Section 3553 analysis; and/or

   b. Based upon mitigating factors and downward adjustments; and/or

   c. Based upon its own judgment that a guideline sentence is an unreasonable sentence.

      1.) As the Supreme Court said in *Spears*:

      **"Even when a particular defendant . . . presents no special mitigating circumstances – no outstanding service to country or community, no unusually**

**disadvantaged childhood, no overstated criminal history score, no post-offense rehabilitation – a sentencing court may nonetheless vary downward from the advisory guideline range . . . The only fact necessary to justify such a variance is the sentencing court's disagreement with the guidelines."**

X. REQUESTS FOR RECOMMENDATIONS AND MISCELLANEOUS ISSUES

A. Defendant will at the sentencing hearing make his requests as to a federal institution. A location that will make it much easier for him to have contact with individuals who continue to work on his case will be requested. Further, the Defendant respectfully requests that this Court place in writing said recommendation of a federal correctional institution.

1. The Bureau of Prisons welcomes judicial recommendations (see *BOP Program Statement 5100.07*) and by statute it is required to consider them. 18 U.S.C. Section 3621(a)(4)(B). Furthermore:

   a. Federal prisons are the most convenient for potential visits from the family of Mr. Cuero.

      1.) Bureau statistics show that it honors judicial recommendations in the overwhelming majority of cases in which a defendant qualifies for a particular recommended institution if there are reasons on the record to support such a designation.

## CONCLUSION

WHEREFORE, the Defendant, Manuel Santos Cuero Vallecilla, by and through undersigned counsel respectfully requests this Court sentence the Defendant to a term of imprisonment that is several years less than the statutory minimum mandatory sentence or in the alternative to the minimum term of incarceration. In the event that the Court determines that it is by statute restrained from sentencing Mr. Cuero to a term of imprisonment below the statutory minimum mandatory sentence, then Mr. Cuero requests that the Court determine his USSG offense level calculation at a level which is substantially less than the USSG offense level calculation which is suggested in the PSR's total level calculation.

Respectfully submitted,

By: /s/ Ronald Marzullo
Ronald Marzullo, Esquire
Florida Bar No.: 613177
P. O. Box 1205
Valrico, Fl. 33595
Tel: (813) 662 3080
Facsimile: (813) 684 2299
Email: marzullorj2@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on November 2, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will then send notice of electronic filing to all attorneys of record.

/s/ Ronald Marzullo
Ronald Marzullo